Scott I. Palumbo - State Bar #021271
PALUMBO WOLFE & PALUMBO, P.C.
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004
(602) 265-5777
(602) 265-7222 (fax)
pwsp@palumbowolfe.com

Attorneys for Plaintiff

Myles McGuire (Illinois Bar No. 6287946)
Paul T. Geske (Illinois Bar No. 6320669)
McGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
pgeske@mcgpc.com

Attorneys for Plaintiff – Pro Hac Vice

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ED HASSEN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>TRYKE COMPANIES, LLC, an Arizona limited liability company,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Ed Hassen, brings this Class Action Complaint and Demand for Jury Trial against Defendant, Tryke Companies, LLC, to stop Defendant from unlawfully sending unsolicited,

automated text message advertisements to consumers' cellphones and to obtain redress for all persons harmed by Defendant's misconduct. Plaintiff, for his Class Action Complaint, alleges as follows based on personal knowledge as to himself and his own acts and experiences, and as to all other matters, on information and belief, including an investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendant owns and operates a chain of marijuana dispensaries located in Nevada and Arizona, which do business under the name "Reef Dispensaries."

2. In a misguided attempt to promote its marijuana dispensaries and cannabis products, Defendant has engaged in an invasive and unlawful form of marketing: sending unsolicited advertisements *en masse* to consumers' cellphones through automated "spam" text message calls.

3. By making these unsolicited, automated text message calls, Defendant has violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 *et seq.*, as well as consumers' privacy rights.

4. The TCPA and its implementing regulations, 47 C.F.R. § 64.1200, *et seq.*, specifically prohibit companies such as Defendant from sending advertisements to consumers through automated text message calls without first obtaining written consent from the messages' recipients.

5. Defendant's conduct has thus caused actual, concrete harm to Plaintiff and other consumers, not only because they were subjected to the aggravation and invasion of privacy that necessarily accompanies unsolicited, automated text messages – particularly text messages containing unsolicited advertisements – but also because consumers like Plaintiff frequently have

to pay their cellphone service providers for the receipt of such text messages, even though the messages were sent without authorization and in violation of federal law.

6. In order to redress these injuries, Plaintiff, on his own behalf and on behalf of a nationwide class defined below, brings suit against Defendant under the TCPA, which protects individuals' privacy rights and the right to be free from receiving unsolicited voice and text calls to cellular phones.

7. On his own behalf and on behalf of the members of a putative class defined below, Plaintiff seeks injunctive relief and an award of statutory damages, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under federal law, namely, the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

9. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because Defendant resides in this District, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, as Plaintiff received unauthorized text messages from within this District.

10. This Court has personal jurisdiction over Defendant, because Defendant is a corporation organized under the laws of Arizona and headquartered within Arizona. Further, Plaintiff's claims arise out of Defendant's unlawful in-state actions, and Defendant does business within Arizona such that it has sufficient minimum contacts with Arizona and/or has purposely

availed itself of Arizona markets to make it reasonable under the U.S. Constitution for this Court to exercise personal jurisdiction over Defendant.

## PARTIES

11.   Plaintiff, Ed Hassen, is a natural person and a resident of Nevada.

12.   Defendant, Tryke Companies, LLC, is an Arizona limited liability company doing business under the name "Reef Dispensary" and "Reef Dispensaries." Defendant is engaged in business as a cultivator and producer of marijuana and other cannabis products, and it sells medical and recreational cannabis products at retail through a network of Reef Dispensary stores located in Nevada and Arizona.

## COMMON ALLEGATIONS OF FACT

### Background

13.   A relatively inexpensive type of marketing involves advertising through Short Message Services. The term "Short Message Services" or "SMS" describes a messaging system that allows cellphone subscribers to use their cellphones to send and receive short text messages, usually limited to 160 characters.

14.   An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is received, the recipient's cellphone rings or makes a sound, alerting the recipient that a text message call has been received.

15.   SMS calls, and particularly automated spam text messages, are unlike more conventional advertisements, because they are forced to the recipient's personal cellphone,

creating an annoying and aggravating interruption that is distracting, wastes the recipient's time, and invades the recipient's privacy.

16. Moreover, in contrast to regular forms of advertising that are paid for solely by the advertiser, SMS calls can actually cost their recipients money, because cellphone users like Plaintiff have to pay their respective wireless service providers either for each text message call they receive, incur a usage allocation deduction to their text messaging plan, or pay a fixed or variable usage fee, regardless of whether or not the message was authorized.

17. Accordingly, Congress enacted the TCPA to prevent unsolicited advertising calls to consumers' cellphones. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

18. Congressional committees investigating the use of telecommunications technology found that legislation was necessary to prevent abusive telemarketing practices and protect consumers from invasions of privacy, harassment, and economic harm. The Senate Committee on Commerce, Science, and Transportation found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to . . . cellular . . . telephone numbers often impose a cost on the called party (. . . [where, e.g.] cellular users must pay for each incoming call . . .)." *See* S. Report No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991). The House Committee on Energy and Commerce concurred, finding that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support

of consumers, state regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed to protect residential telephone subscriber privacy rights." H.R. Report No. 102-317, 1991 WL 245201 at *18 (Nov. 15, 1991).

19. When it passed the TCPA, Congress intended to provide consumers a choice as to how telemarketers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub. L. No. 102–243, § 11. Congress also found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy . . . ." *Id.* §§ 12-13.

20. The TCPA's ban on unsolicited automated calls has been interpreted to extend to automated text messages sent to cellular phones. *See, e.g., In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009).

**Allegations Specific to Plaintiff**

21. Defendant cultivates and produces marijuana and other cannabis products, and sells medical and recreational cannabis products through a network of Reef Dispensary retail stores located in Nevada and Arizona.

22. One of the ways Defendant promotes its products and services is through SMS text

message advertisements sent to individual consumers' cellphones.

23. However, Defendant often fails to ensure that the recipients of its messages have provided prior express written consent as required under the TCPA.

24. Beginning at least as early as August 2018, and continuing thereafter, Defendant began transmitting automated text message advertisements to the cellphones of those whom it hoped would be potential customers of its Reef Dispensary stores.

25. For instance, on August 31, 2018, at 9:44 AM, Plaintiff's cellphones rang, indicating that a text message call was being received. The "from" field of the message was identified as "(317) 561-4779," which is a longcode—a specialized telephone number utilized by Defendant and/or its agents for the transmission of automated text messages *en masse*.

26. The text message that Plaintiff received on August 31st appears below in Figure 1.



**(Figure 1).**

27. On September 20, 2018, at 11:47 AM, Defendant sent Plaintiff a second text

message from the longcode "(518) 244-8898," another longcode operated by Defendant and/or its agents.

28.     The text message that Plaintiff received on September 20th appears below in Figure 2.



**(Figure 2).**

29.     As seen in Figures 1 and 2 above, the scripts of the automated text messages that Plaintiff received were generic and non-personalized. The text messages did not refer to Plaintiff by name, nor did they include his phone number or any other personally identifying information. Rather, the contents of the automated text messages Plaintiff received were the same as the contents of the many other automated messages Defendant sent to other recipients.

30.     Defendant controlled, designed, and determined the content of the text messages reproduced above.

31. Defendant did not obtain Plaintiff's express written consent before sending him the text message advertisements he received.

32. The unauthorized text messages Plaintiff received caused actual, concrete injuries, not only because the messages were sent in violation of the TCPA, but also because they invaded Plaintiff's privacy, interfered with Plaintiff's unrestricted use of his cellphone, and caused Plaintiff to waste time and effort reviewing and deleting the unauthorized messages sent by Defendant.

## **CLASS ACTION ALLEGATIONS**

33. Plaintiff brings this action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and a nationwide class (the "Class"), defined as:

> All persons in the United States who, during the period of four years prior to the filing of this Class Action Complaint through the present, subscribed to or regularly used a cellphone number that was sent one or more automated text message advertisements by or on behalf of Defendant, and for whom Defendant does not have a record of prior express written consent to receive such messages.

34. Expressly excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer, director, or employee of Defendant; and any immediate family members of such officers, directors, or employees.

35. Upon information and belief, the Class contains hundreds, if not thousands, of members such that joinder of all members is impracticable.

36. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting

complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

37. Plaintiff's claims are typical of the claims of the other members of the Class in that the factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

38. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a) Did Defendant and/or its agents send one or more text message advertisements to members of the Class?

(b) Did Defendant and/or its agents use an automatic telephone dialing system to transmit the text message advertisements at issue?

(c) Did Defendant transmit text message advertisements to persons who did not provide Defendant with prior express written consent to receive such messages?

(d) Did the unauthorized text messages distributed by Defendant violate the TCPA?

(e) Are Plaintiff and the members of the Class are entitled to damages and injunctive relief?

39. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

40. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

**COUNT I**
**Violation of Telephone Consumer Protection Act (47 U.S.C. § 227)**
**on behalf of Plaintiff and the other members of the Class**

41. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

42. Defendant made unsolicited text message calls to the cellular telephone numbers of Plaintiff and the other members of the Class using an automatic telephone dialing system, that is, using equipment that had the capacity at the time the calls were placed to automatically dial sequentially from a list of such wireless telephone numbers, as well as to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention.

43. Defendant made these text message calls *en masse* through the use of a longcode, and directed the placement of these unauthorized text message calls to a list of wireless telephone

-11-

numbers that included Plaintiff's and the other Class members' cellphone numbers.

44. Defendant's text message calls constitute advertising under 47 C.F.R. § 64.1200(f)(1) and telemarketing under § 64.1200(f)(12), because Defendant's text messages advertise the commercial availability of its cannabis goods and services, and because Defendant sent these messages for the purpose of encouraging the called parties to purchase property, goods, and services from Reef Dispensary retail stores.

45. Defendant failed to obtain express written consent from Plaintiff and the other members of the Class before sending the messages at issue.

46. Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

47. As a result of Defendant's illegal conduct, Plaintiff and the Class members have had their privacy rights violated, have suffered actual and statutory damages, and, under § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

48. To the extent Defendant knew or should have known that the Class members did not provide prior express written consent to be sent the wireless spam at issue, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the Class members.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for the following relief:

A. An order certifying the Class defined above;

-12-

B. An award of statutory damages;

C. Pre-judgment interest from the date of filing this suit;

D. An injunction requiring Defendant to cease all unauthorized, automated text message advertising;

E. An award of reasonable attorneys' fees and costs; and

F. Such further and other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED this 1st day of November, 2018.

PALUMBO WOLFE & PALUMBO, P.C.


By     /s/ Scott I. Palumbo
Scott I. Palumbo
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004
Attorneys for Plaintiff and the Proposed Class

McGUIRE LAW, P.C.


By     /s/ Paul T. Geske
Myles McGuire
Paul T. Geske
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Attorneys for Plaintiff and the Proposed Class